UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HOWARD W. FRICK,            )
                            )
        Plaintiff,          )
                            )
        v.                  )   Civ. Action No. 11-0357 (ABJ)
                            )
AMTRAK.,                    )
                            )
        Defendant.          )
_____)

## MEMORANDUM OPINION

In this case, plaintiff sued the National Railroad Passenger Corporation ("Amtrak") for injuries he allegedly suffered in January 2008 while traveling on an Amtrak train bound for Chicago from the District of Columbia. Am Compl. [Dkt. # 24] at 1. Claiming that Amtrak breached "a duty of care to ensure [that he, as a passenger,] was not injured by Amtrak's negligence," *id*. ¶ 2, plaintiff seeks $1.5 million in actual and punitive damages. *Id*. ¶ 6. Specifically he claims that "Amtrak breached its duty of care to Frick because … while Frick was walking, exercising due caution and reasonable care, into the lounge car of AMTRAC train number 29, without warning or reasonable notice, the train suddenly and violently lurched propelling Frick forward." Am. Compl ¶ 3.

Following a period of discovery, Amtrak moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Nat'l R.R. Passenger Corp's Mot. for Summ. J. [Dkt. # 42]. Plaintiff opposed the motion [Dkt. # 43], and defendant has replied [Dkt. # 44]. Since plaintiff has produced no evidence on the applicable standard of care as District of Columbia law

1

requires under these circumstances, the Court will grant defendant's motion and enter judgment accordingly.

## I. BACKGROUND

Plaintiff states in his declaration that on January 23, 2008, he purchased an Amtrak ticket at Union Station in the District for a trip to St. Louis, Missouri, via Chicago, Illinois, which he had frequently taken over the past 23 years. Pl.'s Decl. [Dkt. # 43-1] ¶¶ 1, 3. The train left "about two hours late [and] seemed to be moving faster than usual than what [plaintiff had] observed over the many years" of his travels. *Id*. Around midnight, plaintiff "decided to walk to the lounge car where [he] routinely obtained a more comfortable seat and some refreshments." He notes that he "walked carefully because [he] kn[e]w trains can bump along causing someone to lose their balance." *Id*. ¶ 4. Plaintiff "sensed nothing unusual about the flooring" as he walked to the lounge car, but he states that once he was inside that car, "suddenly and without warning the floor of the train lifted me high up into the air, over lounge chairs, the top of which were approximately 4 feet from the floor, propelling me into the side of the train, and then bouncing me back to the floor." *Id*. Plaintiff acknowledges completing an Amtrak incident report on that date in which he stated, "Train lurched – knocked feet out from under me. Fell over chairs onto floor on right side…. Fell on left wrist." Def.'s Mem. of P. & A. [Dkt. # 42-2], Ex. 3. But he adds now that "[a]t the time, I was stunned . . . and [] dazed by the shock of what happened. . . . Looking back at what happened, as I reviewed my statement; I realize that I could not have simply fallen over a chair, but flew over the chair with sudden and violent force sufficient to break my wrist and injure the side of my body." Pl.'s Decl. ¶ 5. He opines that "[s]uch an event does not occur absen[t] the failure on the part of someone in control of the train to proceed with reasonable caution under the circumstances…." *Id.* ¶ 4.

In his complaint, plaintiff alleges that the train was "operat[ing] . . . at speeds excessive under the circumstances [and] in an erratic manner . . . ," Am. Compl. ¶ 4, and that as a "result of the train's sudden and violent lurch," he "sustained serious[] and permanent physical injury to his back and the lumbar area of his spine." *Id*. ¶ 5. In addition, plaintiff alleges that he suffered "injury to his right hip and right wrist and a broken small bone of his left wrist." *Id*.

Plaintiff took no depositions and has provided the court with no independent factual information concerning the operation of the train that evening. In a declaration supplied by the defense, the train operator states that he is "required to comply with and do comply with the published speed restrictions that the Federal Railroad Administration ("FRA") imposes on all rail traffic in the United States," and that "[o]n January 23, 2008, I was aware of and complied with all applicable FRA speed restrictions while operating" the Amtrak train at issue. Def.'s Ex. 4 (Decl. of Anthony Depalma [Dkt. 42-2] ¶¶ 4-5).

## II. ANALYSIS

### A. Summary Judgment Standard

Summary judgment is granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must support the assertion that no facts are in dispute by "citing to particular parts of materials in the record, including . . . affidavits." Fed. R. Civ. P. 56(c)(1)(A). The non-moving party has the burden "to produce admissible evidence establishing a genuine issue of material fact." *Bush v. District of Columbia*, 595 F.3d 384, 386 (D.C. Cir. 2010), citing *Celotex v. Catrett*, 477 U.S. 317, 324 (1986). The Supreme Court defines material facts as "those that might affect the outcome of the suit under governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and a dispute over a material fact is genuine "if the

3

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. However, if the nonmoving party fails to "make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof," then the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

**B. Expert Witness Requirement**

"Under District of Columbia law, the plaintiff in a negligence action bears the burden of establishing three elements: 'an applicable standard of care, a deviation from that standard by the defendant, and injury resulting from that deviation.' " *Robinson v. WMATA*, 941 F. Supp. 2d 61, 67 (D.D.C. 2013), quoting *Scott v. Dist. of Columbia*, 101 F.3d 748, 757 (D.C. Cir. 1996) (other citations omitted). A plaintiff's "[f]ailure to prove a standard of care is [] fatal to a negligence claim," *Scott*, 101 F.3d at 757, and expert testimony on that element of the claim is required when "the alleged negligent act is not within the realm of common knowledge and every day experience." *Id*. (citations and internal quotation marks omitted).

Plaintiff does not dispute (1) that he has not designated an expert witness and (2) that he has not produced evidence on the speed of the train and/or the conditions of the track at the time of the incident. *See* Def.'s Statement of Undisputed Material Facts in Supp. of Nat'l R.R. Passenger Corp.'s Mot. for Summ. J. [Dkt. # 42-1] ¶¶ 2, 3. Instead, plaintiff relies upon his own observations, and he "suggests there is no need for a battle of professional witness [and that] the available relevant evidence eliminates the need [for] opinion testimony." Pl.'s Opp'n at 2. He then argues that the facts are so "clear and unambiguous" that the "doctrine of *res ipsa loquitur* is quite appropriate here."[1] *Id*. at 2, 6.

---

[1] "The doctrine of *res ipsa loquitur* allows an inference of negligence where, although direct evidence of negligence is lacking, an event giving rise to a negligence claim is of a type that does not normally occur in the absence of negligence." *Cobell v. Norton*, 355 F. Supp. 2d 531, 541

4

But "[t]o rely on the doctrine of *res ipsa loquitur,* plaintiff must establish that "(1) [the occurrence is] of the kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the control (exclusive or joint) of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff." *Nichols ex re. Hamilton v. Greater Southeast Comm'y Hosp*., 382 F. Supp. 2d 109, 115 (D.D.C. 2005), quoting *Hailey v. Otis Elevator Co.,* 636 A.2d 426, 428 (D.C.1994).[2] Plaintiff cannot make that showing in this situation.

Plaintiff hypothesizes that his injuries resulted from the train's "excessive" speed. Defendant has countered with evidence indicating that the train operator was in compliance with the FRA's "published speed restrictions" governing "all rail traffic in the United States." Depalma Decl. ¶¶ 4-5. Since "the standards governing the operation of [train operators] are distinctly related to an occupation that is 'beyond the ken of the average layperson.' " *Robinson*, 941 F. Supp. 2d at 67, quoting *Briggs v. WMATA*, 481 F.3d 839, 845 (D.C. Cir. 2007), this case presents a clear situation where an expert is required to establish "the national standard of care." *Id*.; *see Briggs*, 181 F.3d at 845-46 ("[E]xpert testimony is routinely required in negligence cases [involving] issues of safety . . . .," citing *Varner v. District of Columbia*, 891 A.2d 260, 267 (D.C. 2006) (internal quotation marks omitted); *see also Briggs*, 181 F.3d at 845 (listing negligence cases where the D.C. Court of Appeals has required expert testimony despite circumstances that "on first blush, appear to be within the realm of common knowledge"). Consequently, plaintiff's failure to proffer the testimony of an expert witness is "fatal" to his claim. *Scott*, 101 F.3d at 757.

---

(D.D.C. 2005), citing *Jesionowski v. Boston & M.R. R*., 329 U.S. 452, 456 (1947).

[2] *Nichols* held that "the doctrine of res ipsa loquitur is not available as a substitute for expert testimony on the applicable standard of care" in a medical malpractice case. *Id.*

At bottom, plaintiff's opposition to the motion for summary judgment sounds a simple theme: I was hurt in unusual circumstances on the train, so it must have been Amtrak's fault. Notwithstanding the sincerity and vigor with which this view is advanced, and even assuming that plaintiff is an experienced train passenger who was actually and painfully injured, he still bears the burden of *proving* that the carrier owed him an obligation to live up to a particular standard of care and failed to do so, and that this negligence was the cause of the injury. Since even after an extensive period of discovery, plaintiff has produced no evidence on these points beyond his conviction that something must have gone wrong, the defendant's motion for summary judgment must be granted.

## CONCLUSION

In this negligence action predicated on the conduct of an Amtrak train operator, the Court concludes that plaintiff's failure to proffer the testimony of an expert witness on the applicable standard of care entitles defendant to judgment as a matter of law. A separate final order accompanies this Memorandum Opinion.

/s/ Amy B. Jackson

AMY BERMAN JACKSON
United States District Judge

Dated: July 3, 2014